### SHARPLESS *v.* WELSH *et al.*
### *Trust.*

Where a bill is remitted, with directions to appropriate the proceeds among certain creditors, in designated proportions, the party receiving it beeomes a trustee for the creditors, and the money is not liable to be attached on the property of the debtor.

A. being indebted to several persons in Philadelphia, remitted a bill to B., in his favor, A. saying, at the same time, that in a few days, he would send directions about its disposition, which he accordingly did, and apportioned the proceeds of the bill among certain of his creditors; subsequently, one of them laid a foreign attachment upon A.'s funds in the hands of the acceptor of the bill, and of B.: *Held*, that B. became a trustee for the creditors, from the time of receiving A.'s appropriation, and that the creditors thereupon acquired such an interest in the trust fund, as could not be divested or affected by the attachment.

SCIRE FACIAS against John Welsh, Redman Byrne and the Bank of the United States, garnishees in a foreign attachment, issued by the plaintiff against M. Moore, of Charleston. The facts were these: Moore being indebted to several persons in Philadelphia, remitted to Redman Byrne, a bill of exchange, dated the 13th of November 1800, drawn by Joseph Byrne, in favor of Redman Byrne, on John Welsh, at sixty days' sight, for $1700; saying, in the letter that inclosed the bill, "I will send the duplicate, in a days, with directions what to do with it." Accordingly, on the 22d of November, he wrote again to Byrne, ordering the following disposition of the bill:

"To Martin Bernard.................................... 70*l.*
To Moore, surviving partner of Goldthwaite......... 29 dollars.
To Jesse Sharpless................................400 dollars.
To M. Shields.....................................300 dollars.
To Robert Campbell................................400
The balance to be divided equally between Mr. Carr and McGoffin."

Soon after the receipt of his letter, Byrne showed it to the plaintiff, and also to John Shields; told each of them of the appropriations; and promised to pay each the sum specified, when the cash should be received. And on the 26th of December 1800, he wrote to Moore, that the bill "should be disposed of, as his last letter directed." Subsequently to these communications, the plaintiff issued a foreign attachment, on which the present *scire facias* was grounded. Byrne informed Moore of the occurrence, and called for instructions, on the 8th of January *1801; and on the 6th of February following, Moore answered, "I would rather, if by any means you could have it done, that Sharpless should be got to put up with 8 or 900 dollars; and the rest to be paid to the other people mentioned, as far as it will go." But Byrne, conceiving himself bound to pay, according to the first appropriation, did not mention this proposition to Sharpless. In the meantime, the bill of exchange, which had been accepted on the 28th of November, was regularly protested for non-payment—Welsh assigning the attachment, as the cause of his refusal to pay.

On the trial of the cause, it was contended, for the *plaintiff*, that the

242

property in the bill continued to be Moore's, at the time of the attachment; and that the creditors had acquired no lien upon it. (4 Burr. 2174.) The letter of appropriation is nothing more than a private order, to pay the money, when it was received; and Moore had a power to revoke or alter it (as, in fact, he did, in his letter of the 6th of February), at any time before actual payment to the creditors.

But it was insisted, by the counsel for the *defendants*, that the letter of the 22d of November amounted to an irrevocable appropriation and transfer of the fund; that Byrne became a trustee for the creditors named in the letter; and that the trust-fund was not liable to a foreign attachment. (Ambl. 297; 1 Atk. 124; 2 Ibid. 207; 1 Ves. 280; 1 Ves. jr. 331–2; 1 East 550; 5 T. R. 215, 494.

BY THE COURT.(a)—The plaintiff had a legal right to institute the attachment, which cannot be divested, by any irregular attempts to obtain a preference from the trustee himself. The only question is, whether the fund attached, can be regarded, under the circumstances of this case, as the property of Moore?

The facts are few, but powerful. Moore remits the bill to Byrne, with express directions to apply the money to the payment of specific creditors in Philadelphia; and Byrne undertakes to do so. Independent of the communication to the plaintiff, Byrne mentioned the general appropriation to Shields, with a direct and positive promise to pay Shields his proportion of the money. Under these circumstances, it is clear, that there could be no revocation of the appropriation in favor of Shields; to whom Byrne himself had become responsible; but the doubt arises, as to the situation of those creditors who had received no intimation of the remittance. If, indeed, no notice had been given to any of the creditors, we do not think, [*281 that any of the creditors *would have acquired a vested interest in the fund, by the terms of the correspondence between Moore and Byrne. But it is a material fact for the consideration of the jury, that the plaintiff received information, not only of his own apportionment, but of the distributive shares of all the creditors; and that he never objected to this appropriation of the fund, until he issued his attachment. If the jury shall think, from this fact, that the plaintiff ratified or acquiesced in the distributive appropriation; the law will not permit him, afterwards, to monopolize the fund, in the way that the present suit contemplates.

BRACKENRIDGE, Justice.—The equity of the case is strongly in favor of the defendants; but I find it difficult to surmount the strict rules of law, as to those creditors, who, receiving no notice, acquired no right. The creditors who received notice, and assented to the appropriation, had clearly a vested interest. But I incline to think, the law in favor of the creditors stops there; unless the fact is sufficiently ascertained, to satisfy the jury, that the plaintiff, by his conduct, approved and assented to the whole appropriation, after he was fully apprised of it. That fact, the important one in

(a) The cause was tried at *Nisi Prius*, Philadelphia, on the 16th of June 1803, before SMITH and BRACKENRIDGE, Justices.

the cause, if found affirmatively by the jury, must be decisive in favor of the defendants.

On the day succeeding that upon which the charge was delivered, the jury returned to the bar, and declared, that they could not agree upon a verdict ; proposing, at the same time, several legal questions, for the solution of the court. But —

SMITH, Justice, .observed, that it would, probably, extricate the jury from their embarrassment, as well as relieve his own mind, to inform them, that since the adjournment, he had entirely changed his opinion, upon the ·principal legal point in the cause. He said, that he always thought it more honorable to retract an erroneous opinion, when the error was discovered, than to persist in it, upon the suggestions of a false and pernicious pride. He then declared, that on full reflection and research, during the recess, he had been convinced, that from the time of receiving Moore's letter, ordering specific payments to the enumerated creditors, Byrne became a trustee for those creditors ; and that the creditors thereupon acquired such an interest in the trust-fund, as could not be divested, or affected by the plaintiff's attachment. (a)

The jury, having again retired, soon agreed upon a verdict, in favor of the plaintiff, for $400 ; being the sum to which he was entitled by the original appropriation of the bill of exchange.

---

(a) BRACKENRIDGE, Justice, expressed no opinion upon this occasion; but seemed silently to assent to the statement now made by Judge SMITH.

